UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| VINCENT S. MICELI | Case No.: |
| Plaintiff, | |
| v. | |
| WEARABLE HEALTH SOLUTIONS, INC., HARRYSEN MITTLER, AND PETER PIZZINO | |
| Defendants. | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff Vincent S. Miceli ("Miceli" or "Plaintiff"), by his undersigned attorneys, hereby bring the following Complaint against Defendants Wearable Health Solutions, Inc. ("Wearable Health"), Harrysen Mittler, and Peter Pizzino, and in support alleges:

## JURISDICTION AND VENUE

1. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(b), as the Plaintiff and all Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Venue lies in this District pursuant to 28 U.S.C. §1391(b)(1) because the Plaintiff is a resident of this District and a substantial part of the events or omissions occurred within this District, in addition to Wearable Health's agreement that the District of Connecticut is a proper venue.

## PARTIES

3.      Plaintiff Vincent S. Miceli ("Miceli") is and was at all times relevant herein, an individual residing at 61 Southview Drive, Watertown, Connecticut 06795.

4.      Defendant Wearable Health is a publicly traded corporation incorporated in the State of Nevada, with principal executive offices located at 2901 Pacific Coast Hwy, Suite 200, Newport Beach, CA 92663.

5.      Defendant Harrysen Mittler is the CEO and Chairman of Wearable Health's Board and upon information and belief resides in California.

6.      Defendant Peter Pizzino is Wearable Health's President and a Director, and upon information and belief resides in the State of New York.

7.      At all times relevant, Defendants Harrysen Mittler and Peter Pizzino were the only two members of Wearable Health's Board of Directors, and exercised complete dominion and control of Wearable Health.

## FACTS

8.      On May 16, 2022, Mr. Miceli and Wearable Health entered into a three-year Executive Employment Agreement ("Employment Agreement") whereby Plaintiff would become an employee of Wearable Health and serve as the company's Chief Financial Officer for a period of three years; employment was subject to early termination provisions.

9.      Under the terms of the Employment Agreement, Mr. Miceli and Wearable Health agreed to irrevocably submit to the in personam jurisdiction of the Connecticut Federal or State Courts and that any suit or proceeding arising directly and/or indirectly

pursuant to or under the Employment Agreement would be brought solely in a Connecticut state or federal court.

10. Further, Mr. Miceli and Wearable Health agreed by contract that the Employment Agreement and its terms and conditions would be governed by and construed solely and exclusively in accordance with the laws of the State of Connecticut.

11. Mr. Miceli performed all of his services for Wearable Health under the Employment Agreement from and within the State of Connecticut. Harrysen Mittler and Peter Pizzino both directed scores of written and verbal communications to Mr. Miceli in Connecticut, soliciting him and recruiting him to become Wearable Health's Chief Financial Officer. At last one meeting occurred in Connecticut concerning Mr. Miceli's recruitment and hiring, and both Harrysen Mittler and Peter Pizzino specifically contemplated and intended for Mr. Miceli to work entirely within the State of Connecticut.

12. Under the terms of the Employment Agreement, Wearable Health agreed to pay Mr. Miceli $9,000 on the 15th and 30th day of each month, minus applicable withholdings, and award 175,000 restricted shares of Wearable Health's common stock each month.

13. Further, Wearable Health was to provide Mr. Miceli 5,000,000 restricted shares of Wearable Health's common stock which would vest upon signing the agreement.

14. Additionally, Wearable Health was to provide other employee benefits including paying 100% of Mr. Miceli's health insurance premiums, estimated to be $1,444 per month, as well Short-and-Long-Term Disability Insurance, and Term Life Insurance in the amount of $1,000,000. If Wearable Health chose not to provide a health insurance

plan, it agreed to reimburse Mr. Miceli for 100 percent of the premium cost of such plans.

15. Upon working for Wearable Health for one year on May 16, 2023, Mr. Miceli was qualified to receive an annual bonus equal to the value of 7,000,000 restricted shares of the Company's common stock, to be paid as $65,000 cash, with the remaining amount to be paid in restricted shares, which would vest immediately.

## COUNT ONE — AS TO WEARABLE HEALTH SOLUTIONS, INC.
## BREACH OF CONTRACT

1-15. Plaintiff incorporates paragraphs 1 through 15 of the Complaint as if fully alleged herein.

16. Starting in December of 2022, Wearable Health ceased paying the compensation it agreed to pay Mr. Miceli for his services in accordance with the Employment Agreement.

17. Wearable Health's CEO Harrysen Mittler repeatedly assured Mr. Miceli that he would be compensated, and made those assurances verbally and in writing to Mr. Miceli in Connecticut.

18. Mr. Miceli continued to work as the CFO of Wearable Health until July 27, 2023.

19. From December of 2022 to July 27, 2023, Wearable Health failed to compensate Mr. Miceli in breach of the Employment Agreement.

20. Mr. Miceli terminated his Employment Agreement on July 27, 2023.

21. Wearable Health's failure to compensate Mr. Miceli materially breached the Employment Agreement, and constituted a constructive termination of his employment.

22. Wearable Health owes Mr. Miceli $158,870.44 in unpaid wages, benefits and unreimbursed business expenses, a $65,000 annual bonus, and hundreds of

thousands of shares of Wearable Health Solutions Inc. stock under the Employment Agreement, in addition to compensation, salary and benefits to the end of the contract term.

23. Further, under the Employment Agreement, the parties agreed that the prevailing party in an action will be entitled to recover reasonable fees, disbursements and expenses, including attorney's fees and costs from the party against whom enforcement is sought.

### COUNT TWO — AS TO WEARABLE HEALTH SOLUTIONS, INC.
### FAILURE TO PAY WAGES

1-23. Plaintiff incorporates paragraphs 1 through 23 of the Complaint as if fully alleged herein.

24. Mr. Miceli is an employee, and Wearable Health is an employer within the meaning of Conn. Gen. Stat. §§ 31-71a and 31-72.

25. Wearable Health has failed to compensate Mr. Miceli in the form of wages, salary, and fringe benefits in violation of Conn. Gen. Stat. §§31-71c, 31-76k and 31-71e.

26. Mr. Miceli has suffered damages.

### COUNT THREE — AS TO HARRYSEN MITTLER
### FAILURE TO PAY WAGES

1-23. Plaintiff incorporates paragraphs 1 through 24 of the Complaint as if fully alleged herein.

24. Harrysen Mittler possessed and exercised the authority, control and ultimate responsibility to pay Plaintiff and other employee wages. In fact, Harrysen Mittler would decide to pay some employees and not others.

25.  As CEO and Chairman of the two-person Board of Directors, Harrysen Mittler controlled Wearable Health's day-to-day operations and financial decisions.

26.  Mr. Miceli is an employee, and Harrysen Mittler is an employer within the meaning of Conn. Gen. Stat. §§ 31-71a and 31-72.

27.  Harrysen Mittler is personally liable to Mr. Miceli for his compensation in the form of wages, salary, and fringe benefits in violation of Conn. Gen. Stat. §§31-71c, 31-76k and 31-71e.

28.  Mr. Miceli has suffered damages.

## COUNT FOUR — AS TO PETER PIZZINO
## FAILURE TO PAY WAGES

1-23.  Plaintiff incorporates paragraphs 1 through 28 of the Complaint as if fully alleged herein.

24.  Peter Pizzino possessed and exercised the authority, control and ultimate responsibility to pay Plaintiff and other employee wages. In fact, he along with Harrysen Mittler would decide to pay some employees and not others.

25.  As President and member of the two-person Board of Directors, Peter Pizzino controlled Wearable Health's day-to-day operations and financial decisions.

26.  Mr. Miceli is an employee, and, and Peter Pizzino is an employer within the meaning of Conn. Gen. Stat. §§ 31-71a, 31-76k and 31-72.

27.  Peter Pizzino is personally liable to Mr. Miceli for his compensation in the form of wages, salary, and fringe benefits in violation of Conn. Gen. Stat. §§31-71c and 31-71e.

28.  Mr. Miceli has suffered damages.

## COUNT FIVE— AS TO HARRYSEN MITTLER
## MISREPRESENTATION

1-23.   Plaintiff incorporates paragraphs 1 through 24 of the Complaint as if fully alleged herein.

24.   Harrysen Mittler repeatedly and persistently made false representations outside of the State of Connecticut but directed to Mr. Miceli in Connecticut that he would receive the compensation he was due. These statements included that he would get paid, he would be paid, and were made to induce Mr. Miceli to continue to perform services under the Employment Agreement.

25.   Mr. Miceli relied upon those false statements to his detriment, suffering harm within the State of Connecticut because of his failure to receive the income and compensation he was entitled and continuing to perform services without compensation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Vincent S. Miceli claims the following relief:

a.)   Compensatory damages;

b.)   Double damages for wages under Conn. Gen. Stat. § 31-72;

c.)   Attorney's fees and costs under Conn. Gen. Stat. § 31-72 and the Employment Agreement;

d.)   Prejudgment and post judgment interest; and

e.)   Such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts.

Dated:    October 4, 2023
           Middlebury, CT

THE PLAINTIFF
VINCENT S. MICELI

By: _____
Anthony R. Minchella, Esq. (ct18890)
Minchella & Associates, L.L.C.
984 Southford Road, Suite 14
Middlebury, CT 06762
Tel: 203-758-1069
Fax: 203-758-2074
aminchella@minchellalaw.com