UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| VINCENT S. MICELI,<br>    Plaintiff,<br><br>v.<br><br>WEARABLE HEALTH SOLUTIONS, INC.,<br>HARRYSEN MITTLER,<br>PETER PIZZINO,<br>    Defendants. | CIVIL CASE NO.<br>3:23-CV-01294 (JCH)<br><br><br>OCTOBER 7, 2024 |

**RULING ON AMENDED MOTION TO DISMISS COMPLAINT (DOC. NO. 25)**

**I.    INTRODUCTION**

The plaintiff, Vincent S. Miceli ("Mr. Miceli"), brings this suit against Wearable Health Solutions, Inc. ("Wearable Health"), Harrysen Mittler ("Mr. Mittler"), and Peter Pizzino ("Mr. Pizzino").  Mr. Miceli alleges that the defendants failed to pay wages owed to him pursuant to an employment contract.  The First Count alleges breach of contract; the Second, Third, and Fourth Counts allege failure to pay wages pursuant to Sections 31-71c, 31-76k, and 31-71e of the General Statutes of Connecticut; and Count Five alleges tortious misrepresentation.  Complaint (Doc. No. 1) ("Compl.").

Mr. Mittler and Mr. Pizzino's (collectively, the "individual defendants") filed an Amended Motion to Dismiss (Doc. No. 25) ("Mot. to Dismiss") and Defendants' Memorandum in Support of Motion to Dismiss (Doc. No. 25-1) ("Def.s' Mem. Supp") and Defendants' Reply in Support of Motion to Dismiss (Doc. No. 32) ("Def.s' Reply").  The plaintiff opposes the Amended Motion to Dismiss.  Memorandum of Law in Opposition to Motion to Dismiss ("Pl's. Opp'n") (Doc. No. 30).  For the reasons discussed below, the court denies the Motion.

1

## II.    ALLEGED FACTS

Mr. Miceli, a resident of Connecticut, was hired by Wearable Health, located in California, to serve as Wearable Health's CFO.  Compl. at ¶¶ 3–4, 8.  In accordance with the employment agreement negotiated on behalf of Wearable Health by Mr. Mittler, Wearable Health's CEO and member of the Board of Directors, and Mr. Pizzino, Wearable Health's President and the only other member of the Board, Mr. Miceli was to hold the position of CFO for three years, during which time he was to receive compensation in the form of salary, bonus, stock, and benefits.  Id. at ¶¶ 8, 12–15.  The agreement was formed on May 16, 2022.  Id. at ¶ 8.

Both Mr. Mittler and Mr. Pizzino controlled the day-to-day operations of Wearable Health and made its financial decisions.  Compl. Count 3 at ¶ 25; Compl. Count 4 at ¶ 25.  They were responsible for paying their employees and had the authority to decide which employees would be compensated and which employees would have their compensation withheld.  Compl. Count 3 at ¶ 24; Compl. Count 4 at ¶ 24.  Mr. Mittler falsely and repeatedly assured Mr. Miceli that he would be compensated but, despite these assurances, Mr. Miceli was not compensated, in violation of the agreement, from December 2022 to July 27, 2023, Mr. Miceli's last day at Wearable Health.  Compl. at ¶ 20; Compl. Count 5 at ¶ 24.  Mr. Miceli suffered pecuniary harm as a result of the defendants' actions.  See e.g., Compl. ¶ 22.

## III.    STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor. See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020). However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678.

## IV. DISCUSSION

### A. Counts Three and Four

#### 1. Counts Three and Four are Adequately Pled

The individual defendants argue that this court should dismiss Counts Three and Four of Mr. Miceli's Complaint because he has failed to plead the essential elements of the claims alleged therein. Def.s' Mem. Supp. at 12. Specifically, the individual defendants argue that Mr. Miceli failed to plead that Mr. Mittler and Mr. Pizzino were ultimately responsible for setting Mr. Miceli's working hours and causing the wage violations alleged. Id. The individual defendants also contend that Mr. Miceli has failed to offer factual support for the allegation that he was an employee of Wearable Health. Id.[1]

Mr. Miceli responds that his Complaint asserts all of the elements of the claims at issue. Pl.'s Opp'n at 9–11. Mr. Miceli argues that he has alleged the individual

---

[1] The court concludes that Mr. Miceli has adequately alleged that he was an employee of Wearable Health because Counts Three and Four incorporate the preceding paragraphs of the Complaint. In those preceding paragraphs, it is alleged that Mr. Miceli was an employee of Wearable Health. See Compl. at ¶ 8 ("Mr. Miceli and Wearable Health entered into a three-year Executive Employment Agreement ("Employment Agreement") whereby Plaintiff would become an employee of Wearable Health and serve as the company's [CFO]").

defendants had ultimate responsibility for deciding whether to pay him on account of their positions as directors and officers of Wearable Health.  Id. at 10.  On this basis, Mr. Miceli argues the court could plausibly conclude that the individual defendants had the authority to pay or withhold wages, and, therefore, were the specific cause of the alleged violations.  Id. at 10–11.

> Pursuant to section 31-72 of the General Statutes of Connecticut,
>
> [w]hen any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k . . . such employee . . . shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court.

Conn. Gen. Stat. § 31-72.  As relevant to the instant case, an employer is defined as "any individual, partnership, association, joint stock company, trust, corporation . . . employing any person[.]"  Conn. Gen. Stat. § 31-71a.  The Supreme Court of Connecticut has explained that both a corporate employer and an individual may be liable for withheld wages if the individual "possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so."  Butler v. Hartford Tech. Inst., Inc., 243 Conn. 454, 462 (1997).  In interpreting this provision, "Connecticut courts have broadly construed the definition of employer."  Morales v. Cancun Charlie's Rest., No. 3:07-CV-1836 CFD, 2010 WL 7865081, at *6 (D. Conn. Nov. 23, 2010) (citing Butler, 243 Conn. at 462).

With respect to Count Three of the Complaint, Mr. Miceli alleges that he did not receive wages from December 2022 to July 2023, even though they were owed to him

4

Case 3:23-cv-01294-JCH   Document 39   Filed 10/07/24   Page 5 of 12

in accordance with his Employment Agreement, and even though Mr. Mittler, the CEO of Wearable Health, assured Mr. Miceli that he would be paid.  Compl. at ¶¶ 17, 19.  Mr. Miceli alleges that Mr. Mittler controlled Wearable Health's daily operations and financial decisions and had the authority, control, and responsibility of deciding whether to pay wages.  Compl. Count Three at ¶¶ 24–25.  In exercising this authority, Mr. Mittler is alleged to have decided to pay wages to some employees and withhold wages from other employees.  Id. at ¶ 24.  Count Four of Mr. Miceli's Complaint alleges Mr. Pizzino is the President of Wearable Health and serves as the other director on Wearable Health's Board of Directors.  Compl. Count Four at ¶ 25.  Otherwise, Count Four is largely similar to Count Three, except it substitutes Mr. Pizzino for Mr. Mittler.  Compare Compl. Count Three; with Compl. Count Four.  Taking the facts alleged in the Complaint as true for the purpose of this Ruling, Mr. Miceli has plausibly alleged that Mr. Mittler and Mr. Pizzino had the authority as officers and directors of Wearable Health to control hours worked and pay wages.

In Petronella ex rel. Maiorano v. Venture Partners, Ltd., 60 Conn. App. 205 (2000), the Appellate Court of Connecticut addressed the causes of action in Counts Three and Four.  There, the Appellate Court considered whether a trial court erred in concluding that two consultants hired by the defendant company were personally liable under Connecticut's wage protection statute.  Petronella ex rel. Maiorano, 60 Conn. App. at 208–09.  The Appellate Court affirmed the trial court's determination that the consultants were liable, noting that the trial court had found, inter alia, that the consultants controlled the company's financial decisions and day-to-day operations.  Id. at 210–11, 213.  Just as the consultants in Petronella ex rel. Maiorano were found to

have had complete control over the payment of wages, Mr. Miceli has alleged that the individual defendants had similar control in light of their positions as directors and officers of Wearable Health.

The defendants cite <u>Petronella ex rel. Maiorano</u> and <u>Evans v. Tiger Claw, Inc.</u>, 141 Conn. App. 110 (2013), to argue that Mr. Miceli has failed to alleged facts that either of the individual defendants are the specific cause of the alleged wage violation. Def.s' Mem. Supp. at 12.  Having already discussed <u>Petronella ex rel. Maiorano</u>, <u>see</u>, <u>supra</u>, at 5–6, the court considers <u>Evans</u>.  As relevant here, the latter case involved a claim for uncompensated hourly wages brought against individual defendants.  <u>See</u> <u>Evans v. Tiger Claw, Inc.</u>, 141 Conn. App. at 121.  On appeal, the Appellate Court of Connecticut concluded that the plaintiff failed to show that the individual defendants were personally responsible for setting the plaintiff's working hours or paying his wages. <u>Id.</u> at 112, 123–24.  In fact, the court observed unrebutted evidence demonstrated that the plaintiff was permitted to set his own working hours, and the court could not identify any evidence suggesting that the individual defendants were personally responsible for paying the plaintiff.  <u>Id.</u> at 123–24.  Here, by contrast, hourly wages do not appear to be at issue, and Mr. Miceli has alleged facts that plausibly suggest the defendants were responsible for paying the wages allegedly owed to him.

In light of the above, the court concludes that Mr. Miceli has adequately pled Counts Three and Four.

### 2. Contradictory Pleadings are Permissible

The individual defendants assert that Counts Three and Four of the Complaint should be dismissed because they are "implausible."  Def.s' Mem. Supp. at 12.  Counts Three and Four are "implausible", according to the defendants, because they are

inherently contradictory: Mr. Miceli asserts that both individual defendants had "ultimate control" over Wearable Health's financial decisions.  Id.  Mr. Miceli counters that the Federal Rules of Civil Procedure permit him to plead in the alternative, even if doing so is contradictory.  Pl.'s Opp'n at 9–10.

The defendants' argument is unavailing because "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).  Indeed, the Second Circuit has explained, "the plaintiff is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value, without regard to its inconsistency with other parts of the complaint."  Doe v. Columbia Univ., 831 F.3d 46, 48 (2d Cir. 2016).  Accordingly, Mr. Miceli is not required to allege facts that are consistent between Counts Three and Four.

    B.    Count Five

Mr. Miceli alleges Mr. Mittler falsely represented that Mr. Miceli would be paid the compensation he was owed and, reasonably relying on Mr. Mittler's statements, Mr. Miceli was induced to continue to perform the services described in the Employment Agreement.  See Compl. Count Five at ¶¶ 24–25.  Mr. Mittler argues that Mr. Miceli's claim should be dismissed because it is inadequately pled and is duplicative of Count One.  See Def.s' Mem. Supp. at 6–11; Def.s' Reply at 1–8.  Mr. Miceli opposes both arguments.  See Pl.'s Opp'n at 4–9.

        1.    Count Five is Adequately Pled

Mr. Mittler argues that Mr. Miceli's claim of misrepresentation is inadequately pled pursuant to Federal Rule of Civil Procedure 9(b) and asks this court to dismiss Count Five on that basis.  See Def.s' Mem. Supp. at 11; Def.s' Reply at 7.  Mr. Mittler

7

further argues that Mr. Miceli has inadequately pled that Mr. Mittler knew or should have known that certain material statements were untrue, or that he failed to exercise due care in making the statements at issue.[2]  Def.s' Mem. Supp. at 11; Def.s' Reply at 7–9. Mr. Miceli responds that Rule 9(b) does not apply to claims of negligent misrepresentation and that he has adequately pled such a claim in accordance with Rule 8(a)(2).  See Pl.'s Opp'n at 7–9.

This court has previously explained "that Rule 9(b) does not apply to claims of negligent misrepresentation under Connecticut law[.]"  IM Partners v. Debit Direct Ltd., 394 F. Supp. 2d 503, 521 (D. Conn. 2005).  And other courts in this district have arrived at the same conclusion.  See e.g., JCJ Architecture, PC v. Larry Edmondson Assocs., Inc., No. 3:20-CV-1006(RNC), 2024 WL 4264409, at *3 (D. Conn. Sept. 23, 2024) ("the heightened pleading burden imposed by Rule 9(b) is not warranted for claims of negligent misrepresentation.").  Therefore, the pleading standard as set forth in Rule 8(a)(2) applies to Mr. Miceli's claim of negligent misrepresentation.

"[A]n action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result."  Nazami v. Patrons Mut. Ins. Co., 280 Conn. 619, 626 (2006).

---

[2] Mr. Mittler, unsure if Mr. Miceli's Complaint asserts a claim of misrepresentation grounded in an intentional tort or negligence, argues that Mr. Miceli failed to adequately plead this claim under either theory.  See Def.s' Mem. at 9, 11.  In his Opposition to the Motion to Dismiss, Mr. Miceli maintains that Count Five is pled under a theory of negligence.  Pl.'s Opp'n at 8.  Therefore, the court will consider the individual defendants' arguments in so far as they might address a claim of negligent misrepresentation.

8

Mr. Miceli, who incorporates prior allegations into his claim of negligent misrepresentation, alleges Mr. Mittler "made false representations" that Mr. Miceli would be paid, and, in relying on these false representations, Mr. Miceli suffered pecuniary harm in the form of unpaid compensation. Compl. Count Five at ¶¶ 24–25. While Mr. Miceli does not expressly allege that Mr. Mittler knew or should have known that his representations were false, Mr. Miceli alleges that Mr. Mittler controlled Wearable Health's day-to-day operations and financial decisions, and decided which employees should be paid. Compl. Count Three at ¶¶ 24–25.

Taking the facts alleged in the Complaint as true, as the court must at this stage of the litigation, Mr. Miceli has adequately pled a claim of negligent misrepresentation such that the court is able to reasonably infer that the defendant is liable for the alleged misconduct.

### 2. Count Five is not Duplicative of Count One

Mr. Mittler argues Count Five of Mr. Miceli's Complaint must be dismissed because it is duplicative of Count One because the underlying allegations regard promises to perform in accordance with the contract at issue in Count One. Def.s' Mem. Supp. at 6–9; Def.s' Reply at 1–6. Mr. Miceli responds that the claims are distinct primarily because Count Five is brought against Mr. Mittler while Count One is brought against Wearable Health. Pl.'s Mem. Opp'n at 4.

As a general rule, "a remedy on the contract is independent of a remedy for negligent misrepresentation." Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 579 (1995). However, "the economic loss doctrine bars negligence claims that arise out of and are dependent on breach of contract claims that result only in economic

9

loss." Ulbrich v. Groth, 310 Conn. 375, 404 (2013).[3]  As a result, courts have barred claims of negligent misrepresentation brought against a defendant when similar claims sounding in contract are also brought.  See, e.g., id. at 405; Flagg Energy Dev. Corp. v. Gen. Motors Corp., 244 Conn. 126, 153, 709 A.2d 1075, 1088 (1998), overruled on other grounds by Ulbrich v. Groth, 310 Conn. 375, 78 A.3d 76 (2013); Prysmian Cables & Sys. USA LLC v. ADT Com. LLC, 665 F. Supp. 3d 236, 253 (D. Conn. 2023).  In Ulbrich, for example, the plaintiffs sued a bank and an auction company working on behalf of the bank for, inter alia, negligent misrepresentation.  310 Conn. at 387.  The plaintiffs also sued the bank for breach of the implied warranty of title.  Id.  The theories of liability under both causes of action were essentially the same: the bank and the auction company knew, or should have known, that there were conflicting claims to the auctioned property.  See id. at 381.  Accordingly, the court concluded that claims of negligent misrepresentation were barred because "both the tort claims and the warranty claim are premised on the same alleged conduct . . . and rely on the same evidence."  Id. at 405.

In the instant case, Mr. Miceli does not bring a breach of contract claim against Mr. Mittler, nor could he because the contract at issue was formed between Mr. Miceli and Wearable Health.  Instead, Mr. Miceli brings a claim of negligent misrepresentation against Mr. Mittler. Compl. Count Five at ¶¶ 24–25.  Further, at this stage of the

---

[3] While the Supreme Court of Connecticut has not determined whether this doctrine applies to contracts falling outside the ambit of the Uniform Commercial Code, courts in this district have applied this doctrine in such circumstances.  PTI Assocs., LLC v. Carolina Int'l Sales Co., No. 3:09-CV-849 WWE, 2010 WL 363330, at *6 (D. Conn. Jan. 26, 2010), order clarified on reconsideration, No. 3:09-CV-849(WWE), 2010 WL 617374 (D. Conn. Feb. 18, 2010).

10

litigation, the court cannot conclude that the breach of contract claim, and negligent misrepresentation claim necessarily rely on the same conduct and evidence.

In concluding that a claim of negligent misrepresentation could proceed against an individual defendant, the Supreme Court of Connecticut explained, "in contrast to the plaintiffs' contract-based claims, these claims seek to hold the officer liable for his own alleged acts and omissions, rather than the corporation's." Coppola Const. Co. v. Hoffman Enterprises Ltd. P'ship, 309 Conn. 342, 355 (2013) (cleaned up and internal quotation marks omitted). The individual defendants correctly note that Coppola considered the "sole issue" of whether a principal could be held liable in tort for actions that also created liability for the corporate entity under contract. Def.s' Reply at 4–5. However, in considering this issue, the Coppola court approvingly cited a case where a breach of contract claim brought against a company and a negligent misrepresentation claim brought against an employee of the company both survived a motion to dismiss. 309 Conn. at 355–56; see Jefferson v. Collins, 905 F.Supp.2d 269, 279–81 (D.D.C.2012). The Coppola court, in characterizing this case, among others, explained that it represents "well settled law . . . 'that an officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation itself is liable.'" 309 Conn. at 354 (quoting Kilduff v. Adams, Inc., 219 Conn. 314, 331–32 (1991)).

More recently, another court in this district considered whether it was appropriate to dismiss a claim of negligent misrepresentation brought against a representative of the corporate defendant, against which the plaintiff brought contract-based claims. JCJ Architecture, PC v. Larry Edmondson Assocs., Inc., No. 3:20-CV-1006(RNC), 2024 WL 4264409, at *1 (D. Conn. Sept. 23, 2024). The court allowed the tort claim to proceed,

11

explaining that, "under Connecticut law, a plaintiff that does not have a contractual relationship with the defendant may bring a negligent misrepresentation claim 'when the negligent misrepresentation induced the plaintiff to enter into a contract.'" JCJ Architecture, 2024 WL 4264409, at *3 (quoting Ulbrich, 310 Conn. at 406) (reasoning that the plaintiff alleged the individual defendant induced it to continue working because of the defendant's assurances of future payment).

In light of the foregoing, the court concludes that Mr. Miceli's claim of negligent misrepresentation should not be dismissed at this stage of the litigation.

## V.   CONCLUSION

For the reasons stated above, the court denies the defendants' Amended Motion to Dismiss (Doc. No. 25).


**SO ORDERED.**

Dated at New Haven, Connecticut this 7th day of October 2024.


    /s/ Janet C. Hall
Janet C. Hall
United States District Judge