**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VINCENT S. MICELI. | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:23-CV-01294 (JCH) |
| | : | |
| v. | : | |
| | : | |
| WEARABLE HEALTH SOLUTIONS, INC., | : | APRIL 15, 2025 |
| HARRYSEN MITTLER, | : | |
| PETER PIZZINO, | : | |
| Defendants. | : | |

**RULING ON PLAINTIFF'S MOTION IN LIMINE (DOC. NO. 73)**

**I.    INTRODUCTION**

The plaintiff, Vincent S. Miceli ("Mr. Miceli"), brings this suit against Wearable

Health Solutions, Inc. ("Wearable Health"), Harrysen Mittler ("Mr. Mittler"), and Peter

Pizzino ("Mr. Pizzino").  Mr. Miceli alleges that the defendants failed to pay wages owed

to him pursuant to an employment contract and in violation of section 31-71 et seq. of

the General Statutes of Connecticut.  Complaint (Doc. No. 1) ("Compl.").

Before the court is Mr. Miceli's Motion in Limine in which he seeks to exclude

evidence that he and the defendants orally modified the terms to his employment

agreement such that payment of his wages would be deferred until the financial

condition of Wearable Health improved.  Plaintiff's Motion in Limine (Doc. No. 73);

Plaintiff's Memorandum of Law in Support of Motion in Limine ("Pl.'s Mem") (Doc. No.

74).  The defendants oppose the Motion.  Defendants' Memorandum of Law in

Opposition to Motion in Limine ("Def.s' Opp'n") (Doc. No. 77).  For the reasons

discussed below, the court denies the Motion.

1

## II.     DISCUSSION

Mr. Miceli and Wearable Health allegedly entered into a written employment agreement.  Mr. Miceli now moves to exclude evidence that he agreed to orally modify the terms of the employment agreement so as to waive, reduce or defer wages owed by Wearable to Mr. Miceli.  Pl.'s Mem. at 1.  Mr. Miceli argues the Motion should be granted because the employment agreement contains a provision prohibiting oral modifications of the agreement and the effect of the supposed oral modification is void because it is against public policy.  Id. at 2–7.  For both of these reasons, Mr. Miceli maintains that evidence of an oral modification should not be admitted under Federal Rules of Evidence 401, 402, and 403.  Id. at 2.  The defendants oppose both arguments.  See Def.s' Opp'n.

### A.     Merger Clause

Mr. Miceli relies on paragraph 12 of the employment agreement, which he quotes in part as providing: "'No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party which are not set forth expressly in this Agreement.'"  Pl.'s Mem. at 2 (quoting Def.s' Ex. 1 at 9).  On the basis of the quoted portion of paragraph 12, Mr. Miceli argues that this merger clause prevents the court from considering parole evidence because the parties expressed their intent that the employment agreement represents a fully integrated contract.  See id. at 2–3.  The defendants oppose this argument, asserting that pursuant, to another provision of the employment agreement, the parties contemplated reducing Mr. Miceli's salary under certain circumstances, and that even if it was not possible to orally modify the contract, the parties agreed to waive payment of Mr. Miceli's wages.  Def.s' Opp'n at 2–4.

2

The quoted portion of paragraph 12 does not support Mr. Miceli's Motion because the effect of the merger clause is to exclude parol evidence of the parties' intentions <u>at the time of contracting</u>.  11 Williston on Contracts § 33:23 (4th ed.) ("By stipulating the fact of integration, these clauses purport by the very terms of the parties' agreement to require application of the parol evidence."); 11 Williston on Contracts § 33:1 (4th ed.) ("The parol evidence rule is a substantive rule of law that prohibits the admission of evidence of <u>prior or contemporaneous</u> oral agreements, or prior written agreements, whose effect is to add to, vary, modify, or contradict the terms of a writing which the parties intend to be a final, complete, and exclusive statement of their agreement." (emphasis added)).  The anticipated evidence that Mr. Miceli seeks to exclude is evidence of an oral modification occurring after the employment agreement was formed, thus the merger clause, even if operative, would not keep out evidence of a subsequent oral modification.

Mr. Miceli also relies on another portion of paragraph 12, which reads, "'No provisions of this Agreement may be amended, modified, waived or discharged unless such amendment, waiver, modification or discharge is agreed to in writing signed by the Executive and such officer of the Company as may be specifically designated by the Board.'"  Pl.'s Mem. at 3 (quoting Def.s' Ex. 1 at 9).

The portion of paragraph 12 just quoted is not a merger clause, it is instead commonly referred to as a no-oral modifications ("NOM") clause.  Regarding such provisions, "the common law rule is that even where the contract specifically states that no non-written modification will be recognized, the parties may yet alter their agreement by parol negotiation."  2 Corbin on Contracts § 7.14.  This is based on the principle that

"contracting parties cannot today restrict their power to contract with each other tomorrow." Id.  In Connecticut, the law of which controls the interpretation of this agreement, courts apply the common law rule, such that despite a NOM clause, contracts may be orally modified.  See Blakeslee v. Bd. of Water Comm'rs of City of Hartford, 121 Conn. 163, 183 A. 887, 895 (Conn. 1936) ("the general rule is stated to be that, despite a provision in the contract that it may not be changed except in writing, a parol agreement modifying its terms will be given effect."); McKenna v. Woods, 21 Conn. App. 528, 533, 574 A.2d 836, 838 (1990) ("It is well settled that despite the presence of . . . a [no-oral-modification] clause in a contract, a modification by subsequent parol agreement will be given effect."); accord Kallas v. Harnen, No. 303611, 1996 WL 285539, at *5 (Conn. Super. Ct. May 10, 1996).

Accordingly, the court concludes the parties could have orally modified the employment agreement despite paragraph 12.  Thus, paragraph 12 cannot serve as a basis to bar evidence of an oral modification of the employment agreement.

B.    Public Policy

Mr. Miceli next argues that, even if the contract could be modified under its express terms, a modification like the one contemplated here whereby an employee agrees to defer payment of his wages, is void as against public policy.  Pl.'s Mem. at 4–6.  Specifically, Mr. Miceli observes that section 31-71c of the Connecticut General Statutes requires an employer to pay an employee outstanding wages upon his termination, and section 31-71e, prohibits an employer from withholding wages unless certain conditions are met that are not at issue here.  Conn. Gen. Stat. Ann. § 31-71e. On the basis of these provisions, Mr. Miceli argues it is against public policy for an

4

employee and employer to agree that the employees' wages will be deferred.  Pl.'s Mem. at 4–6.  The defendants oppose this argument.  Def.s' Opp'n at 4–5.

In <u>Ravetto v. Triton Thalassic Techs., Inc.</u>, 285 Conn. 716 (2008), the Connecticut Supreme Court considered whether it was error for a trial court to conclude the defendant's plan to defer payment of employees' wages because of the defendant's poor financial health was unreasonable as a matter of law in light of Connecticut's wage statutes.  <u>Id.</u> at 724–25.  The court explained, "[w]e cannot conclude as a matter of law . . . that an employer experiencing financial hardship that honestly informs employees that it cannot meet payroll and that does not promise them that future payment will be made is acting unreasonably."  <u>Id.</u> at 725.  "This is particularly true," the court continued, "where the employees are experienced business people and members of management who choose to continue working in the hope that their services to the employer will improve the financial status of the company."  <u>Id.</u>  Accordingly, it is not unreasonable as a matter of law for a company to defer an employee's wages under the circumstances just described.  In the instant case, it is for the finder of fact to determine whether Wearable Health honestly informed Mr. Miceli of its poor financial condition and sought to defer payment of his wages, and whether Mr. Miceli agreed to continue working without payment until the financial health of the company improved.

Similarly, the Connecticut Supreme Court has observed that section 31-72 of the Connecticut General Statutes, which provides the right of action for an employee to seek damages for unpaid wages, "does not embody substantive standards to determine the amount of wages that are payable but provides penalties in order to deter employers from deferring wage payments once they have accrued."  <u>Geysen v. Securitas Sec.</u>

Servs. USA, Inc., 322 Conn. 385, 393 (2016).  Indeed, because "[t]here is a strong public policy in Connecticut favoring freedom of contract," it did not violate public policy for an employer and employee to agree that wages would be paid only upon the occurrence of a condition precedent.  Id. at 392, 396.

Guided by the cases just discussed, the court concludes it is not a violation of public policy for an employer and employee to agree that payment of certain wages will be deferred until the financial health of the employer improves.  Accordingly, public policy would not have prevented the parties from modifying the employment agreement as described and defendants may seek to introduce evidence to that effect at trial.  The court, therefore, denies Mr. Miceli's Motion in Limine.

III.     CONCLUSION

For the reasons stated above, the court denies the plaintiff's Motion in Limine. (Doc. No. 73).  The defendants may seek to introduce evidence that the parties orally modified the employment agreement at issue such that payment of the plaintiff's wages would be deferred.

**SO ORDERED.**

Dated at New Haven, Connecticut this 15th day of April 2025.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge